UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUSTY BRITO p/k/a JR WRITER,

        Plaintiff,

  v.

UNIVERSAL MUSIC GROUP, INC.,

        Defendant.

---

Civil Action No. _____

COMPLAINT FOR ACCOUNTING AND
UNJUST ENRICHMENT

Plaintiff Rusty Brito p/k/a JR Writer ("Plaintiff" or "Brito"), by and through his attorneys, Mills

Legal, brings this action against Defendant Universal Music Group, Inc. ("UMG" or

"Defendant") and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action by a registered copyright co-owner and co-author to compel an accounting of

profits and to recover his share of master and publishing royalties that Defendant has collected

from the commercial exploitation of two sound recordings in which Plaintiff holds an undivided

co-ownership interest: "Shake" (ISRC: USDJ20401093, Copyright Reg. No. PA0001299843)

and "Squalie" (ISRC: USDJ20300748, Copyright Reg. No. PA 1-866-094) (collectively, the

"Works").

1

2. Plaintiff is listed as a copyright claimant and co-author on both Works in the records of the United States Copyright Office. He is publicly credited as a featured artist and co-writer on streaming platforms including Spotify and Apple Music. He receives ASCAP publishing royalties and SoundExchange performance royalties in connection with both Works. At no point has Plaintiff signed any work-for-hire agreement, royalty waiver, or assignment of rights.

3. Since at least April 2025, Plaintiff has engaged in good-faith correspondence with UMG through its royalty helpdesk (Ticket #166937), submitting all required vendor onboarding documentation. Despite acknowledging Plaintiff's co-authorship credits, UMG has refused to account for or remit Plaintiff's share of master-side royalties, citing an internal policy requiring an "artist agreement, Letter of Direction, or label waivers", a prerequisite that has no basis in copyright law where, as here, no transfer of rights was ever executed.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a), as this action arises under the Copyright Act of the United States, 17 U.S.C. § 101 et seq.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) because Defendant Universal Music Group, Inc. resides in this district, maintaining its United States headquarters at 1755 Broadway, New York, New York 10019.

## III. THE PARTIES

6. Plaintiff Rusty Brito, professionally known as JR Writer, is an individual residing in the State of New Jersey. Plaintiff is a recording artist, lyricist, performer, and co-author of the Works at issue.

2

7. Defendant Universal Music Group, Inc. is a corporation with its United States principal place of business at 1755 Broadway, New York, New York 10019. UMG is one of the largest music conglomerates in the world, engaged in recording, distributing, licensing, and monetizing sound recordings and musical compositions. Songs of Universal, Inc., a named copyright claimant on "Shake," and Universal Music Corporation, a named copyright claimant on "Squalie," are related entities operating under the UMG corporate umbrella. At all relevant times, UMG and its affiliates have exploited the Works commercially and collected royalties therefrom.

## IV. FACTUAL ALLEGATIONS

### A. "Shake", Copyright Ownership and Commercial Exploitation

8. "Shake" is a musical composition and sound recording first published on December 7, 2004, appearing on the album Purple Haze released by Cam'ron on Roc-A-Fella Records (Label No. B0002728-02). The work is registered with the United States Copyright Office under Registration No. PA0001299843 (effective June 10, 2005).

9. The copyright registration for "Shake" lists the following copyright claimants: Songs of Universal, Inc.; Tiarra's Daddy Music; R. Brito; and Cameron Giles. Plaintiff R. Brito (Rusty Brito) is expressly identified as a copyright claimant and co-author, credited for words (lyrics) alongside Cameron Giles. The work is listed as performed by Cam'ron, featuring J.R. Writer.

10. The authorship credits for "Shake" are further corroborated by commercial streaming metadata. Spotify credits the work as written by Cameron Giles, E. Hinson, and R. Brito, and performed by Cam'ron with JR Writer as a featured artist. These credits are publicly displayed on all major digital service providers ("DSPs").

11. Plaintiff also holds ASCAP writer registrations for "Shake" and receives publishing royalties through ASCAP in connection with the work.

3

12. At no time has Plaintiff executed a work-for-hire agreement, royalty waiver, assignment of copyright, or any instrument transferring his ownership interest in "Shake" to UMG, Songs of Universal, Inc., or any other party. Under 17 U.S.C. § 204, no such transfer is valid absent a signed written instrument. No such instrument exists. Plaintiff therefore retains an undivided co-ownership interest in "Shake."

**B. "Squalie", Copyright Ownership and Commercial Exploitation**

13. "Squalie" is a musical composition and sound recording first published on August 19, 2003, appearing on the album From Me 2 U recorded by Juelz Santana on Roc-A-Fella Records. The work is registered with the United States Copyright Office under Registration No. PA 1-866-094 (effective September 5, 2013).

14. The copyright registration for "Squalie" lists four co-authors, including "Marcos Brito" for music and lyrics. Marcos Brito is Plaintiff's legal middle name of Dominican origin, used interchangeably with "Rusty Brito" in certain early administrative filings. The individual identified as Marcos Brito in the copyright registration is the same person as Plaintiff Rusty Brito. The copyright registration also lists Universal Music Corporation as a named copyright claimant by written agreement.

15. The authorship credits for "Squalie" are further corroborated by commercial streaming metadata. Spotify credits the work as written by Barry White, Greg Green, La'Ron James, R. Brito, and Seon Thomas, and performed by JR Writer and Juelz Santana. Genius.com likewise credits "Squalie" as written by Juelz Santana, J.R. Writer, Rsonist (Heatmakerz), Thrilla (Heatmakerz), Barry White, Nas, and Large Professor.

4

16. Plaintiff's ASCAP registration for "Squalie" (Work ID 890143004) confirms that Rusty Brito (ASCAP Member No. 441217000) holds a 25% ownership and collection interest in the composition, alongside co-author Laron L. James (25%) and publisher JR Writer Inc. (50%).

17. Plaintiff also receives SoundExchange performance royalties for both "Shake" and "Squalie," which are distributed only to featured performers and sound recording rights holders, further confirming his status as a featured performer with an ownership interest in the Works.

18. At no time has Plaintiff executed a work-for-hire agreement, royalty waiver, assignment of copyright, or any instrument transferring his ownership interest in "Squalie" to UMG, Universal Music Corporation, or any other party. Plaintiff therefore retains an undivided co-ownership interest in "Squalie."

19. The copyright registration for "Squalie" is itself dispositive on this point. The registration reflects that certain other parties, Sa-Vette Music, Unichappell Music Inc., Little A Music, Universal Music Corporation, and Sony/ATV Songs LLC, each transferred their respective interests to the listed claimants by written agreement. These transfers are expressly documented in the registration. Conspicuously absent is any such transfer from Marcos Brito (Plaintiff). The copyright registration thus affirmatively demonstrates that UMG and its affiliates are fully capable of obtaining and recording written transfers of copyright interests when they choose to do so, and that no such transfer was ever obtained from Plaintiff.

20. Moreover, to the extent Universal Music Corporation holds any interest in "Squalie" through a written agreement with other co-authors, that acquisition made Universal Music Corporation a co-owner of "Squalie" alongside Plaintiff, it did not extinguish Plaintiff's undivided interest. A co-owner who exploits a jointly owned work is obligated to account to all other co-owners for

5

their proportionate share of the resulting profits. Universal Music Corporation's acquisition of other parties' interests therefore imposes, rather than eliminates, a duty to account to Plaintiff.

### C. UMG's Refusal to Account

21. UMG and its affiliates have commercially exploited the Works continuously through digital streaming platforms, downloads, licensing, and other distribution channels, generating substantial ongoing revenue.

22. As a co-owner of the copyrights in the Works, Plaintiff is entitled to his proportionate share of all revenues derived from exploitation of the Works, including both master-side and publishing royalties, from the date of first commercial release.

23. Beginning on or about April 25, 2025, Plaintiff initiated formal correspondence with UMG's royalty helpdesk (Ticket #166937) requesting an accounting of royalties and activation of a vendor account for royalty disbursements. Over the following nine months, Plaintiff submitted all requested onboarding documentation, including completed W-9 and ACH/Wire Authorization forms, government-issued identification, and bank verification.

24. Despite Plaintiff's full compliance with all administrative requests, UMG has at all times refused to address master-side royalties. On or about May 9, 2025, Kristen Armstrong, UMG's Manager of Global Client Services, stated that UMG did not have Plaintiff in its records as a credited producer and that master royalty inquiries required production of a contract. On or about September 2, 2025, she reiterated that "unless UMG-Royalties is provided with documentation of an existing arrangement (such as an artist agreement, Letter of Direction or label waivers), we are unable to address any recording master royalties or sound recording accounting questions."

6

25. On or about January 16, 2026, Plaintiff submitted formal written demands (Ticket Nos. #166937 and #182628) attaching copyright registrations, ASCAP registrations, SoundExchange documentation, and DSP screenshots, and demanding backdated accounting for master and publishing royalties on both Works.

26. On or about January 21, 2026, UMG confirmed it was updating Plaintiff's copyright royalty vendor profile and acknowledged that copyright (publishing) royalties would be issued quarterly, with the next statement on February 15, 2026. However, UMG again expressly refused to address master-side royalties absent an artist agreement or Letter of Direction (Ticket #182664).

27. On or about January 28, 2026, Marcie Turner of UMG's Global Client Services reiterated the same refusal, stating: "UMG-Royalties needs to receive documentation of an existing artist royalty-bearing arrangement (such as an artist agreement, Letter of Direction or label waivers) in order to address any claims of artist recording master royalties."

28. Dean Saunders, UMG's Global Director of Client Success & Quality Control, communicated orally with Plaintiff and initially acknowledged that UMG's finance department would reallocate master royalty payments from Cam'ron's account to Plaintiff once Plaintiff's role as writer and featured artist was established, which Plaintiff accomplished through the documentary evidence submitted. Saunders subsequently reversed this position, contending that a "letter of direction or waiver" was required by internal policy.

29. UMG's internal policy requiring a "letter of direction" or "artist agreement" as a precondition to accounting for master royalties is inconsistent with federal copyright law. Under 17 U.S.C. § 201(a), copyright in a work of joint authorship vests in all co-authors from creation. Under 17 U.S.C. § 204, any purported transfer of such ownership interest is invalid absent a written

7

instrument signed by the owner. UMG has never produced any such signed instrument from Plaintiff. No such instrument exists.

30. Critically, the burden of establishing a valid transfer of copyright ownership rests on the party asserting the transfer, here, UMG. It is not Plaintiff's obligation to disprove the existence of an agreement he never signed. If UMG possessed an artist agreement, recording contract, or any instrument purporting to assign Plaintiff's master rights, UMG would have it in its own files. Major record labels maintain their artist agreements as a matter of standard business practice. Yet at no point in the nine-month correspondence record, spanning Ticket #166937 from April 2025 through January 2026, did UMG ever produce, reference, or quote from any such instrument. Instead, UMG repeatedly demanded that Plaintiff produce a contract, which is precisely backwards: a party seeking to enforce a rights transfer must produce the instrument, not the party whose rights were purportedly transferred.

31. The absence of any artist agreement in UMG's own records is itself strong evidence that no such agreement exists. Plaintiff Rusty Brito has confirmed that he never signed an artist agreement, recording contract, work-for-hire agreement, or any other instrument transferring his ownership interest in "Shake" or "Squalie" to UMG or any of its affiliates. No such instrument has ever been presented to Plaintiff, and none has been produced by Defendant in the course of the parties' extended correspondence.

32. As a result of UMG's refusal to account, Plaintiff has been deprived of master-side royalties to which he is legally entitled, in an amount to be determined at trial, covering the period from the commercial release of each Work through the present.

## V. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Accounting as Co-Owner of Copyright (17 U.S.C. § 101 et seq.)

33. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

34. Plaintiff is a co-owner of the copyrights in "Shake" (Reg. No. PA0001299843) and "Squalie" (Reg. No. PA 1-866-094) by virtue of his status as a co-author of those works and his express identification as a copyright claimant in the records of the U.S. Copyright Office.

35. As a co-owner of the copyrights, Plaintiff is entitled to an accounting from UMG of all profits derived from the commercial exploitation of the Works, including master-side and publishing royalties, from the date of first publication of each Work through the present.

36. UMG has exploited and continues to exploit the Works without accounting to Plaintiff for his proportionate share of the resulting revenue, particularly on the master side.

37. Plaintiff has repeatedly demanded an accounting since April 2025. UMG has refused. Plaintiff is entitled to a full accounting and to judgment for his proportionate share of all revenues generated by the Works.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

38. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

39. UMG has received and retained revenues, including streaming royalties, licensing fees, and other income, derived from the commercial exploitation of works in which Plaintiff holds a co-ownership interest, without remitting Plaintiff's proportionate share.

40. Plaintiff has conferred a benefit upon UMG by virtue of his creative contributions to the Works, contributions that are reflected in his copyright registration, ASCAP registration, SoundExchange registration, and public artist credits on all major DSPs.

41. It would be inequitable and unjust for UMG to retain these revenues without compensating Plaintiff. Plaintiff is entitled to recover the amount by which Defendant has been unjustly enriched at Plaintiff's expense.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rusty Brito respectfully requests that this Court enter judgment as follows:

(a) Ordering Defendant to provide a full and complete accounting of all revenues generated from the exploitation of "Shake" (ISRC: USDJ20401093, Reg. No. PA0001299843) and "Squalic" (ISRC: USDJ20300748, Reg. No. PA 1-866-094), from the date of first commercial release of each Work through the date of judgment, including all master-side and publishing royalties;

(b) Awarding Plaintiff his proportionate share of all such revenues, together with pre-judgment and post-judgment interest;

(c) Ordering Defendant to correct its internal records to properly identify Plaintiff Rusty Brito (a/k/a R. Brito, a/k/a Marcos Brito) as a co-owner and royalty participant in both Works;

(d) Awarding Plaintiff damages for unjust enrichment in an amount to be determined at trial;

(e) Awarding Plaintiff his costs and disbursements; and

(f) Granting such other and further relief as this Court deems just and proper.

10

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure.


Respectfully submitted,


By: ___/:Kiara Santos/___

Kiara Santos, Esq.
Mills Legal
14 Penn Plaza, Suite 2002
New York, NY 10122
ksantos@millslegal.com
Attorneys for Plaintiff Rusty Brito
Dated: June 5, 2026